*385 OPINION.
Littleton:
The first issue is whether taxable profit was realized by petitioner, a stockholder of the Old Dominion Oil Co., and, if so, how much, in thé transactions in which oil leases were acquired from the Cliff Petroleum Co. and the Southwestern Petroleum Co., under an arrangement in which funds were furnished by stockholders of the Dominion Company for the purchase of the leases and later stock was issued by the Dominion Company to these stockholders on *386 account of the funds so furnished. This same transaction was before the Board in V. J. Bulleit, 3 B. T. A. 631. On the evidence there presented we held that the transaction amounted to an investment on the part of the stockholders when the funds were furnished or invested for the acquisition of the leases, and that taxable profit arose at the time the stock was issued to the stockholders, the amount of the taxable profit being the difference between the amount invested and the market value of the stock received.
While additional evidence has been presented in this proceeding which we did not have before us in a consideration of the Bulleit case, we fail to find anything which would alter the conclusion there reached. Borne confusion exists in the record because of the fact that the original plan of financing the acquisition of the leases contemplated the formation of two corporations and the payments which were made were on the basis of subscriptions which were signed for the capital stock of these proposed corporations. The corporations were not formed, but a revised plan was adopted whereby the stockholders who became parties to the transaction were to receive stock of the Dominion Company and cash instead of stock of the proposed corporations and cash when the transaction was finally completed. This agreement with respect to the payment of cash to the stockholders was likewise not followed, though the record is not clear as to Avhat supplemental agreement was entered into, if any, other than in the final settlement with the stockholders, the stockholders elected to take stock of the Dominion Company instead of cash in satisfaction of the liability on account of the funds furnished by them. That is, instead of receiving $200,000 in cash from the Dominion Company, the stockholders elected to take stock of the Dominion Company of a par value of $200,000. In addition, they also received stock of a par value of $200,000 as contemplated in the resolution of the stockholders dated August 17, 1918.
The petitioner objects to the decision in the Bulleit case and urges that this transaction amounted to a contribution to the capital of the Dominion Company by the stockholders on account of which stock was to be issued, and that any attempt to impose a tax on account of this transaction disregards substance, and looks only to the form of what transpired. The petitioner further contends that the opinion is in error in considering that the stockholders acquired the leases and later sold them to the Dominion Company. The answer to this question presents the usual difficulty of distinguishing between form and substance, and this is peculiarly true in this instance for the reason that deviations were made from the form which the original transaction was supposed to take and these changes were not always reduced to formal agreements, or at least evidence to that effect was not presented. We are in entire accord with the petitioner that *387 m determining whether a particular transaction is subject to income tax, the substance, and not the form, is to be regarded. In fact, in deciding the Bulleit case, we sought to determine the substance of that which transpired, the intention of the parties in entering into the agreements in question and the manner in which these agreements were carried out. When viewed in this light, the logical answer seems to be that the stockholders entered the transaction with the expectation, and with representation made to them which might lead them to believe, that more would be realized from the venture than was risked therein, and, in fact, it was because we found that more had been realized than had been invested that we said a taxable profit resulted. In return for the payment of .$200,000 in cash these stockholders received stock, property which had a value in excess of $200,000. Instead of receiving cash equal to the amount of cash paid in, $200,000, and stock of a par value of $200,000, they elected to take stock of a par value of $400,000. Impliedly, the petitioner says that if cash had been received instead of stock, a taxable profit might have resulted, but that since only stock was received, no taxable profit did result. In support of this position, petitioner cites United States v. Davison, 1 Fed. (2d) 465, which involved a case where, in a plan of reorganization, a cash dividend was declared and the stockholders given the privilege of having the amount of cash to which a stockholder was entitled applied on a subscription to additional stock which was then issued. The court there held that Davison, who elected to have his cash applied on his stock subscription, did not thereby receive taxable income, even though those who received cash would be taxable. But that is far from being an analogous situation to the one here involved. Here there was no dividend declaration of any kind, nor did all of the stockholders participate in the issuance of stock at the completion of the transaction such as would occur in a dividend declaration, the stockholders who shared in the distribution being only those who became parties to the agreement and paid in their share of the $200,000. While most of the stockholders paid in their pro rata share, in a few instances the obligation was assumed and paid by other stockholders. These payments were made in order to entitle the stockholders to share in the benefits to be derived from the lease-acquisition transaction. This is not the same as the Davison case. Likewise, the dissimilarity between Morrow v. Nashville Iron, Steel & Charcoal Co., 3 L. R. A. 37, from which the petitioner quotes at length, and the instant case, is equally apparent.
As to the contention made that the decision in the Bulleit case is in error in considering that the leases were acquired by the stockholders, we deem it a sufficient answer to say that even if we should concede that title to the leases was not acquired, the stockholders at least *388 acquired valuable contract rights through the payment in of $200,000, upon which they were entitled to realize after certain conditions were fulfilled. The rights were entirely separate and distinct from the stock of the stockholders and were so treated on the books of the Dominion Company. That these rights were bought and sold entirely apart from the stock is evidenced by the fact that the petitioner in this proceeding, in May, 1919, acquired 47% rights, which entitled him to participate in the benefits which would accrue on the completion of the lease acquisition transaction, but in such purchase he did not subscribe to or acquire stock. These rights which he then acquired were of the same character as those which he acquired at the inception of the lease transaction., It would be idle, therefore, to say that something partaking of the nature of property was not acquired when these payments were made and likewise that there was not a realization upon such investments when the rights were exchanged for stock of the Dominion Company. And, further, it is equally clear that unconditional right to these leases did not exist in the Dominion Company until after the agreement with the stockholders had been completed by the issuance of stock in satisfaction of the funds furnished on account of the purchase price of the leases. The mere fact that the cash was paid by the stockholders to the Dominion Company, which, in turn, used it to acquire the leases, would not mean that the Dominion Company thereby became the unconditional owners of the leases or that the stockholders did not acquire rights on account of their payments which must be satisfied before the Dominion Company became the unconditional owners of the leases. To follow the petitioner’s theory would, in truth, be regarding form and not substance.
This leaves for consideration the question as to the amount of profit realized by the petitioner. His original investment was $8,000. In addition he acquired certain stock on which the 40 per cent obligation had not been met and paid on account thereof $1,800. Also, he purchased 47% rights for which he paid $17,612. This made a total investment of $27,412. In the Bulleit case we found the fair market value of this stock to be $1.75 at the time of receipt. While in this proceeding additional evidence was presented as to the value of this stock, such as the sale of rights, sale of stock prior and subsequent to July 31,1919, the basis used in the consolidation which was effected between the Dominion Company and the Belle Point Oil Co., and other evidence of value, we are of the opinion that the fair market value of $1.75 as determined in the Bulleit case is supported by the evidence, and it is accordingly sustained. This makes a total value for that which was received of $50,960 (29,120 shares at $1.75 per share), or a taxable profit realized on the transaction of $23,548 ($50,960 less $27,412).
*389 The next issue relates to tbe pipe-line transaction, the substance of which seems to have been as follows: In 1918 the Dominion Company and one Schroer entered into a contract for the construction of a pipe line to certain oil fields of the corporation, but before the agreement was carried out difficulties arose which were met by financial assistance from five of the stockholders of the Dominion Company, one of whom was the petitioner. We do not know the details of the understanding between the parties with respect to this financial assistance given by these stockholders, but after the pipe line was completed the parties executed an agreement from which it appears that Schroer and the five stockholders are recognized as the owners of a one-half interest in the pipe line. The Dominion Company sold its assets in 1920 to the Superior Oil Co. and included among these assets was the pipe line. The petitioner, along with two other stockholders who were parties to the pipe line transaction, was appointed as a liquidating committee for the Dominion Company. When this committee came to dispose of the funds received on account of the pipe line, they paid to each member of the committee $18,130.66 and a like amount to the other two stockholders who were parties to the transaction. The evidence is not clear what this amount represented, though the respondent treated this amount as profit to the individuals. Also, in the opening statement for the petitioner at the hearing it was stated that the members of the committee “set aside to themselves $18,130.66 for their proportionate part of the profits claimed to have been realized from the sale of the pipe line.” Further, the allegation in the petition is that the amount distributed to these individuals was the amount which they claimed in excess of that which they had contributed. After the payments had been made the other stockholders objected to these payments, and contended that these amounts should be returned to the Dominion Company. On the other hand, the members of the Committee set up a claim of $120,000 for services in connection with the liquidation. Actions were instituted in the courts with respect to the controversies, and these actions were still' pending at the time of the hearing, though counsel for petitioner, who likewise represented the members of the committee in the court proceedings, testified that a compromise agreement had been reached, which was awaiting the approval of the court, under which the members of the committee would withdraw their claim for services and also pay to the stockholders some $12,000.
The question is whether this amount of $18,130.66 which was received by the petitioner in 1920 and is still retained by him was properly included by the respondent in petitioner’s gross income for 1920. The petitioner contends that there could have been no gain to *390 him on account of the sale of the pipe line for the reason that the evidence does not show that petitioner ever .owned an interest in the pipe line and that an attempt to have him considered as such would be opposed to the -statute of frauds. But whether petitioner was acquiring an interest in the pipe line which would require compliance with the statute of frauds we do not find it necessary to determine, since it does not appear to be questioned that he acquired rights of some nature when he assisted in financing the pipe-line venture and that he was entitled to the benefits which flowed therefrom. The substance of the transaction is that petitioner agreed to assist and did assist in the financing of a certain venture, and our question is whether what he received over that which he risked in the venture is taxable income. The evidence does not show what he contributed to the undertaking, or, in fact, that he did more than serve as a co-indorser with the other parties on the notes through which funds were secured, but we certainly deem it fair to consider that the amount which is now sought to be taxed and which the committee distributed to the petitioner represented the amount to which the committee considered the petitioner was entitled as his share of the proceeds of the venture. If the taxpayer realized more out of this venture than he put into it (and we do not understand this to be disputed), it is difficult to conceive that this excess should be exempt from taxation on the grounds stated by the petitioner. Again, substance, and not form, must be our guide.
It is further urged that the amount received by the petitioner should not be taxed- in 1920 for the reason that it was paid by the committee in violation of their duties as trustees and that it could only be income to the petitioner when it was finally decided that it unconditionally belonged to him. Again, we find ourselves unable to agree with the petitioner’s contention. The petitioner received the amount in question in 1920 and up to the time of this hearing was still retaining it. We must determine income-tax liability on the basis of what occurred rather than on the basis of what might have taken place. Anna M. Harkness, 1 B. T. A. 127. Had the stockholders objected before payment and had payment not been made until the controversy was finally settled, we certainly could not have said that the petitioner, who reported on the receipts and disbursements basis, should have reported taxable income prior to its receipt. But what happened was that the petitioner received the amount in question in 1920 as representing the profits of a venture to which he was a party and we do not think that the more fact that the payment has been questioned is sufficient to justify our saying that this was not taxable income when received. The evidence introduced with respect to the agreement for the settlement of the controversy between the trustees and the stockholders, which was awaiting the approval of the court *391 when this hearing was held, would permit the trustees to retain the greater part of that which they had received. Whether adjustment may be necessary on account of the part, if any, which they may be required to return is not before us. Accordingly, the action of the respondent in including the amount of $18,130.66 in taxable income is sustained.
The next issue relates to salaries and commissions of petitioner from the Kentucky Wagon Manufacturing Co. for 1919 and 1920. With respect to the salary or commission item of $7,892/T5 for 1919, the petitioner conceded, in his brief filed after the hearing, that the evidence establishes that the respondent’s treatment of this item is correct and, accordingly, abandoned the error assigned on account thereof. As to the item of $14,942.64, commissions earned in 1920 and placed to petitioner’s credit at the end of 1920, but neither paid nor made unconditionally available for payment in 1920, we are of the opinion that the respondent was in error in including this item as a part of petitioner’s taxable income for 1920.
Evidence was introduced at the hearing as to whether petitioner received a salary of $5,000 for 1920 in 1920 or 1921, the respondent having considered this salary as income for 1920 and the petitioner not having reported it as income in any year, though seeking at the hearing to show that it was not paid until 1921. The petitioner failed to avail himself of the privilege granted to amend his petition to make this properly an issue and in his brief stated that insufficient data was available to make necessary a change in the Commissioner. The Commissioner’s action with respect to this point will accordingly not be disturbed.
The error assigned by the petitioner with respect to dividends received by him in the amount of $6,338.94 from the Old Dominion Oil Co. in 1920, is likewise easily disposed of in that the respondent, in his brief and at the final hearing, conceded that these dividends were nontaxable, and that his action in subjecting them to tax was in error. Prior to this confession of error, the parties entered into the following stipulation:
It is agreed by the parties to this appeal that in the year 1920, in the Commissioner’s determination of dividends received from the Old Dominion Oil Company, the amount was understated, through clerical error, in the sum of $1,027.78, and it is also agreed that in the Commissioner’s determination of dividends received by the appellant in 1920, from corporations other than tho Old Dominion Oil Company, that the dividend amount was understated through clerical error in the amount of $1,216.00.
This agreement will, of course, require no correction with respect to dividends received from the Dominion Company, but appropriate adjustment, consistent with the stipulation, should be made on *392 account of dividends other than those received from the Dominion Company.
The Commissioner also conceded at the hearing that the petitioner in 1919 had failed to take deductions for interest in the amount of $2,798.51 and for charitable contributions in the amount of $200 to which he was entitled. Correction should be made accordingly.
With respect to the plea of the statute of limitation made by the petitioner for 1919, the petitioner appears to have overlooked the fact that a waiver was filed for 1919 which extended the time for the determination, assessment and collection of taxes for such year until March 15, 1926, and that such waiver was properly introduced in evidence. ' Since the deficiency notice was mailed on December 8, 1925, the deficiency is not barred by the statute of limitations. As to 1920, the return was filed on March 15,1921, and the deficiency notice mailed on December 3,1925, which was within the five years provided by statute for making such determination. The deficiency for 1920 is accordingly likewise not barred by the statute of limitation.
The last issue relates to the allegation on the part of the Commissioner that the penalty for fraud, or in the alternative, for negligence, should be imposed on account of the preparation of the returns for 1919 and 1920. In his brief the respondent conceded, and we think properly so, that the evidence is insufficient to establish that the petitioner was actuated by fraudulent intentions in the preparation of these returns. This leaves only the question of negligence for consideration.
With respect to 1919, errors were undoubtedly made in the preparation of the return for this year, but we are unable to say that these occurred on account of negligence. Certainly, for example, in the instance of the profit which we have determined on the lease-acquisition transaction, we can well see how the petitioner might well have omitted this item from his return because he did not consider that taxable profit had arisen therefrom. In the instance of the other major item omitted, profit from the sale of Flesher Petroleum stock, many transactions, were involved, and not only had the records pertaining to these transactions been inadvertently destroyed, but also the petitioner’s confidential secretary who was relied upon for furnishing information to him and who assisted in the preparation of this return had died some two years prior to the hearing. We are thus left with little more evidence than that less income was reported than should have been, and the petitioner is at a decided disadvantage in making a complete defense to the increase shown. On the whole, we are not satisfied that negligence has been shown for 1919, and, accordingly, we are of the opinion that no penalty should be imposed on account of the deficiency for such year. As to 1920, we *393 likewise find items, such as the pipe-line venture, which could well have been omitted for reasons similar to those to which we referred in the lease-acquisition transaction, and the evidence supports such a conclusion rather than the allegation of negligence. But such considerations are not applicable in the instances where a salary of $6,000 from the Dominion Company and a salary of $5,000 from the Kentucky Wagon Manufacturing Co. were entirely omitted from the return. Undoubtedly, the petitioner was a very busy man during this period and necessarily had to delegate many duties to others, but we are not aware that this is a good defense since in the final analysis, the responsibility for filing this return was on the petitioner. We are of the opinion that the failure to report these items is properly chargeable to negligence for which the petitioner is responsible, and that the 5 per cent penalty for negligence should accordingly be imposed on account thereof.

Judgment will be entered wider Bule 50.