CORONADO REALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 45135, 50328.   Promulgated November 30, 1931.

*Robert R. Faulkner, Esq.*, for the petitioner.
*Owen W. Swecker, Esq.*, for the respondent.

OPINION.

McMahon: The first question presented is whether the respondent erred in holding that the amount of $150,000 should be deducted pro rata each year over the life of the lease, 99 years, instead of the useful life of the improvements, 33 years. Petitioner contends that the amount of $150,000 was paid for the improvements, since the yearly rental provided in the lease was a fair consideration for the use of the land itself, and that, since petitioner expected to derive its income from the improvements alone, it should be entitled to a ratable return of its investment over the life of the improvements before the earnings therefrom are subjected to tax.

Respondent contends that there is nothing in the lease agreement indicating or implying that the $150,000 represented the purchase price of the improvements. After a careful examination of the lease, we find ourselves in agreement with the contention of the respondent. While the stipulated facts do show that petitioner was organized primarily for the purpose of taking over and operating the "Coronado Building," which constituted the improvements upon the realty, yet the lease itself covered the premises upon which the Coronado Building is located, and provided that all the consideration, including the $150,000, was for the execution of the lease. We

can not find from the evidence that the $150,000 was paid for the improvements or for the specific use of such improvements (to the exclusion of the land itself). The case of *L. S. Donaldson Co.*, 12 B. T. A. 271, cited by petitioner is distinguishable from the instant proceeding. In that case the improvements were purchased by the lessee of the land upon which such improvements were located. We hold that the respondent did not err in prorating the $150,000 over the life of the lease.

Petitioner has also introduced some evidence for the purpose of showing that debts of the face value of $5,052.13 were ascertained to be worthless and charged off in 1927. In that year, after an examination of petitioner's records by a certified public accountant and upon being advised by him that there were bad accounts to the extent of $7,170.89, petitioner set up a reserve for bad debts in the amount of $7,150. While the items reported by the accountant to the officers of the petitioner as being bad included the items set forth in our findings of fact, the evidence further shows that such items were not actually charged against the reserve until 1928.

Section 234 (a) (5) of the Revenue Act of 1926 provides:

> (a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:
>
> *     *     *     *     *     *     *
>
> (5) Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

Article 151 of Regulations 69, relating to the Revenue Act of 1926, provides in part as follows:

> Bad debts may be treated in either of two ways—
>
> (1) By a deduction from income in respect of debts ascertained to be worthless in whole or in part, or
>
> (2) By a deduction from income of an addition to a reserve for bad debts.
>
> Taxpayers were given an option for 1921 to select either of the methods mentioned for treating such debts. (See article 151, Regulations 62.) The method used in the return for 1921 must be used in returns for subsequent years and for returns under the Revenue Act of 1926 unless permission is granted by the Commissioner to change to the other method.  *  *  *

In *Kay Manufacturing Co.*, 18 B. T. A. 753, the taxpayer had elected in 1921 to take deductions of debts ascertained to be worthless, instead of employing the reserve method. In 1922 it took a deduction of an addition to a reserve for bad debts, although the addition to the reserve was not made on the books of account until 1923. The taxpayer had not sought or obtained the Commissioner's permission to change the election made in 1921. We held that, under section 234 (a) (5) of the Revenue Acts of 1921 and 1924 and article 151 of Regulations 62 and 65, the petitioner was precluded from using

the reserve method. To the same effect is *Ewald & Co.*, 18 B. T. A. 1130. Section 234 (a) (5) of the Revenue Act of 1926 is identical with the corresponding provision of the Revenue Acts of 1921 and 1924, and article 151 of Regulations 69 is similar to the same numbered article in Regulations 65.

However, as pointed out in *Ewald & Co.*, *supra*, it does not necessarily follow that, because petitioner claimed in its return only deductions of additions to a reserve for bad debts, petitioner is not entitled to deductions for such debts as were ascertained to be worthless and charged off in the taxable year in question. We therefore turn to a consideration of whether petitioner has met the requirements of the statute with regard to ascertainment of worthlessness and charging off of the debts. As stated in *Ewald & Co.*, *supra:*

* * * The fundamental purpose in requiring the charge-off is to evidence the worthlessness of the debt, or, in other words, to establish the loss sustained by the taxpayer, and this end is accomplished and the charge-off effected by the elimination of the bad debt from the taxpayer's assets. If the debt is in fact ascertained to be worthless, it should no longer be treated or considered as an asset. The effective elimination of the debt as an asset meets the statutory requirement as to charge-off. Cf. *Thomas J. Avery*, *supra; O. S. Stapley Co.*, 13 B. T. A. 557; *Lipman's, Inc.*, 13 B. T. A. 1274.

In the instant proceeding we can not determine from the ambiguous and contradictory evidence that the debts in question were eliminated from the petitioner's assets in 1927. There is evidence to show that it was not until 1928 that they were charged against the reserve. It is our opinion, therefore, that, whether or not the debts were in fact worthless in 1927 (which question we do not here decide), petitioner is not entitled to deduct them in that year, for the reason that it has not shown that they were charged off in that year. See *Britton Lumber Co.*, 20 B. T. A. 583.

The petitioner cites *Pool & Kelly, Inc.*, 19 B. T. A. 1317. However, that case is distinguishable from the instant proceeding for the reason that in that case direct charges to profit and loss were made, in the year in which the bad debt deductions were claimed, of the *exact amounts of the accounts* involved which had been ascertained to be worthless, but, instead of placing those amounts to the credit of the various accounts, the credit was made in a private ledger in an account denominated " reserve for bad and doubtful accounts." In the instant proceeding it appears from the evidence that the specific items of bad debts in question were not charged to the reserve until 1928, the year subsequent to the year in which the deductions are sought to be taken.

Nor have we overlooked *McMinnville Manufacturing Co.*, 19 B. T. A. 486, and *Dillon Supply Co.*, 20 B. T. A. 404. Both of those cases are likewise distinguishable from the instant proceeding. In

*McMinnville Manufacturing Co.*, *supra*, an entry was made on the petitioner's cash book in the year in which the bad debt deductions were sought to be taken, setting forth each of the individual accounts as a reserve for bad debts. In *Dillon Supply Co.*, *supra*, each bad debt sought to be deducted was taken out of the loose-leaf accounts receivable ledger and marked "reserved," in the year in which the deduction was sought to be taken, and at the end of the year the officers of the taxpayer went over those accounts and made notations of "reason for charging off." As pointed out above, in the instant proceeding the evidence discloses that the specific items which petitioner claims as deductions for bad debts were not charged to the reserve for bad debts until 1928.

*Judgment will be entered for the respondent.*