*439 OPINION.
Sternhagen :
1. The respondent treated the transactions between the petitioner and Jennings and each of the others as sales of shares, and the prices received as including taxable gain to the extent that they exceeded the proper basis of cost or March 1, 1913, value. The petitioner’s attack centers upon the contention that the transactions were not sales by him, but were loans to him of the amounts received and that the transfers by him of the shares were merely by way of collateral security for such loans. If they were loans to him they were plainly not income. But the burden to establish them as loans is upon the petitioner, not only because the respondent has officially determined that the transactions were sales, but also because they are expressly so designated in the contracts of the parties thereto.
The evidence intended to support the petitioner’s view as to the character of the transactions is, aside from the written, documents, the oral testimony of petitioner himself and of the lawyer who drew the first contract with Jennings; none of the parties on the other side *440 of these transactions was offered as a witness. The oral testimony is that the petitioner, wanting the use of money with which to acquire more Rand shares, wanted to borrow it. He was an economically independent man of learning and intelligence, a university professor of economics, a writer, and an inventor whose patents had been fruitful. He was not a necessitous man and under no constraint except that of his own desire. 'When he learned from his lawyer that the terms upon which he and Jennings had tentatively agreed would amount to a usurious contract, he conscientiously and voluntarily gave up the idea of borrowing and, with the aid of his lawyer, worked out a plan of sale which would distribute the opportunity for profit between himself and the buyer. Although he had a right to reacquire at a fixed price in accordance with a prescribed scale, graduated with time, this was entirely at his election. There was no duty upon him to take back the shares either at a fixed time or upon request and no duty upon him to pay back any of the amount received by him for the shares. His obligation ifco pay was conditioned upon his exercise of the option.
Clearly upon the face of the transaction this was not a loan, and we are unable to find from anything dehors the contract that the parties intended to and actually did contract only for a loan. As between the petitioner’s deliberate writing to express his intention and his oral statement of his intention, the writing must prevail. The evidence all establishes that the contract of sale is exactly what the parties intended it to be. There is an entire lack of evidence that the petitioner was imposed upon or was in a position where he might be imposed upon, so that he could invoke a court of equity to relieve him from the oppression of an unconscionable promise. He was the originator of the plan (for we must identify him ,in this respect with his own lawyer) and both its substance and form were at his instigation and to some extent his own drafting.
Were it to be held that after all his care these were but loans, they would be no less usurious than the original plan which he deliberately sought to avoid. While no ruling by this Board that these were usurious contracts would have sanction to stamp them as such in respect of their validity or enforceability, such a determination should not be lightly made in any event, for .it would not only affect this petitioner and his .taxes, but each other party to the contract, both as to his tax basis and his civic character under the usury statute. While such considerations would give way before unmistakable facts, they require attention when the question is merely one of characterization from circumstance. The charge of usurious lending should not be applied indirectly to all of these parties by an official decision unless it is amply supported by the *441 evidence; and this we can not find. Certainly a construction of the contract as a valid sale demands recognition over that of a usurious loan.
So far as the evidence shows, the entire conduct of these parties has been consistent with the concept of a sale. They were not extending credit to petitioner, but “regarded this as a very good investment” in the Remington Rand stock. One, for example, as testified by petitioner, “ believed that he was making a very great investment and went in too deep. He got the money which he advanced to me, whether you call it a loan or a purchase, by borrowing at the bank on the collateral of the stock which I transferred to him which, of course, is a dangerous thing to do, and when the stock market crash came, he was wiped out, and at that time I agreed to sell him or to modify the contract so as to sell him outright 1,000 shares of Remington Rand at $20 a share so that the whole title and interest would belong to him, and he paid me for that by a note which subsequently I had to take care of myself because he could not pay it at the bank, in order for him to release the collateral on his loan. He had got in deep water with his loan, and I offered to help him out by endorsing his note, so that eventually I have assumed his obligation.” This is wholly inconsistent with the effect of a loan to petitioner on collateral, for the stock market crash would have been disastrous to petitioner as borrower as well as to his creditor who had hypothecated the collateral.
The petitioner argues that the disparity between market quotations at which presumably he could have sold his shares and the prices fixed in the contracts demonstrates that there was no sale. If the disparity between price and actual value were substantial, a court would give it weight in a proceeding by a borrower against an oppressive lender to set aside a deed and have it adjudged a mortgage or to escape the consequences or a usurious loan. But treating the disparity as large enough to be moving, it has its explanation not in oppression but in the reserved option to buy back. This, the contracting parties said in the contract, was of its essence. If petitioner had been willing to sell outright he could have sold at the market. But instead he wanted an assured right to buy back at a fixed price, and for the reservation of this right he apparently was willing to make a concession in price. At least, he did lower the price and the sale was other than a simple one, and it may be assumed that the price was commensurate with the terms as a whole. But this departure from a simple sale is yet a sale and not a loan, and the low price does not signify that a loan was intended.
That title to the shares passed to the purchasers admits of little doubt. It needs only the assumption of death or bankruptcy to *442 make this clear. What petitioner had, was not a right of redemption but a right of purchase at an agreed price. Before this right was perfected, the shares were not his assets and the proceeds of the prior sale were.
The Commissioner, we think, correctly treated,the contracts as contracts of sale and the amounts received by petitioner as sale price with the gain included in income.[1] This necessarily dismisses the petitioner’s claim for deduction of $17,150.88 as interest upon loans.
2. In two instances the sales by the petitioner were below cost, involving a loss of $8,565.20 in 1927 upon a sale to Jennings and $1,395.78 in 1928 upon a sale to Greene. The Kevenue Act of 1926, section 214 (a) (5), provides:
Sec. 214. (a) In computing net income there shall be allowed as deductions:
* * . * * * * *
(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade' or business; but in the case of a nonresident alien individual only if the profit, if such transaction had resulted in a profit, would be taxable under this title. No deduction shall be allowed under this paragraph for any, loss claimed to have been sustained in any sale or other disposition of shares of stock or securities where it appears that within thirty days before or after the date of such sale or other disposition the taxpayer has acquired (otherwise than by bequest or inheritance) or has entered into a contract or option to acquire substantially identical property, and the property so acquired is held by the taxpayer for any period after such sale or other disposition. If such acquisition or the contract or option to acquire is to the extent of part only of substantially identical property, then only a proportionate part of the loss shall be disallowed.
The substance of section 118, Kevenue Act of 1928, is similar. Since the petitioner in all of his contracts had an option to acquire substantially the identical shares sold, no deduction for loss may be allowed.
3. The basis for petitioner’s 15 percent deduction for charitable contributions is not limited to ordinary income, but includes capital gains, Bliss v. Commissioner, 68 Fed. (2d) 890; Harbison v. Commissioner, 68 Fed. (2d) 1004 (both C.C.A., 2d Cir.); Aaron Straus, 27 B.T.A. 1116 (review pending, C.A.D.C.). Thus limited, the petitioner’s deduction should be allowed.
4. The omission by petitioner of substantial items from his 1927 return was clearly negligent and respondent has added the penalty prescribed by Kevenue Act of 1926, sec. 275 (a). This was correct. *443 Petitioner- can not escape his responsibility for- a correct return by committing its preparation entirely to his secretary. Board v. Commissioner, 51 Fed. (2d) 48; 14 B.T.A. 374, 393; Edmond A. Hughes, 24 B.T.A. 1022 (review pending C.C.A., 5th cir.); D. C. Bothwell, 24 B.T.A. 1351 (review pending, C.A.D.C.).
Reviewed by the Board.

Judgment will he entered- under Rule 50.

 Without discussing specifically the numerous decisions cited by • the parties, it is sufficient to cite in support of our opinion, Conway v. Alexander, 7 Cranch. 218; Russell v. Southard, 12 How. 147; Wallace v. Johnstone, 129 U.S. 58; Houghton v. Burden, 228 U.S. 161; Chase & Baker Co. v. National Trust & Credit Co., 215 Fed. 633; In re Grand Union Co., 219 Fed. 353; Stark v. Bauer Cooperage Co., 3 Fed. (2d) 214; General Motors Accept. Corp. v. Mid-West Chevrolet Co., 66 Fed,, (2d) 1; Guilford-Chester Water Co. v. Guilford, 107 Conn. 519; 141 Atl. 880.